Opinion issued July 30, 2019



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00024-CV

————————————

**MAHASIN A. HAWDI, Appellant**

**V.**

**ATHEEL MUTAMMARA, AGENT AND ATTORNEY-IN-FACT FOR WILLIAM B. MUTAMMARA, Appellee**

On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Case No. 16-DCV-236345

## MEMORANDUM OPINION

This is an appeal from a final judgment confirming an arbitration award. Appellant Mahasin A. Hawdi is the wife of William B. Mutammara, who currently resides in a senior assisted living and memory care facility. Mahasin is 78 years old, and William is 88 years old. Atheel Mutamarra is William's adult son,

Mahasin's stepson, and the holder of financial and medical powers of attorney for William.

Before their marriage in 2007, Mahasin and William signed a premarital agreement that set forth provisions regarding the characterization of and rights to manage their assets during and after their marriage. This agreement included an arbitration provision. In 2016, a dispute arose between Atheel and Mahasin regarding ownership and use of property that Atheel contended was his father's separate property. Atheel sought arbitration under the premarital agreement to obtain "a declaration of the rights, duties, and obligations" of each spouse under the agreement, the imposition of a constructive trust over William's separate property that was allegedly possessed by Mahasin, and injunctive relief to preserve William's assets. Mahasin opposed arbitration, but the trial court granted Atheel's motion to compel arbitration. Atheel later sought confirmation of the arbitration award, and the trial court entered a final judgment.

On appeal, Mahasin raises seven issues. Four issues challenge the trial court's order compelling arbitration, and three issues challenge the arbitration award as included in the final judgment. We affirm.

**Background**

Before Mahasin and William married, they signed a premarital agreement. They stipulated that their intent was "to clarify their respective property rights to

2

eliminate any uncertainty about those rights." The agreement identified what would comprise each party's separate property upon marriage, and it provided that "[e]ach party will have the full, free, and unrestricted right to manage the separate property over which he or she has control."[1] It also provided that "[n]either party will have the authority to encumber or dispose of the other party's separate property without the other party's express written consent."

The agreement also provided for "binding arbitration" "in accordance with Texas arbitration law.":

> The parties agree to submit to binding arbitration ***any dispute or controversy regarding the validity, interpretation, or enforceability of this agreement***, as well as all issues involving its enforcement in connection with a dissolution proceeding between the parties. Each party expressly waives any right to trial by a court or trial by a jury. If a dissolution proceeding or declaratory judgment proceeding is filed in Texas, the arbitrator appointed under this agreement will simultaneously be designated as special master under the Texas Rules of Civil Procedure, and the parties agree to jointly apply to the court for any orders that are necessary to vest the arbitrator with all powers and authority of a special master under the rules.

---

[1] The agreement included provisions regarding: representations and disclosures of financial positions, children, the parties' property, management of property, events that would not comprise evidence of community property, liabilities, future business transactions, pending and future litigation, future credit transactions, household and personal expenses, joint acquisition of assets, dissolution of the marriage by court order or death, retirement benefits, gifts, independent conveyances or bequests, reimbursement, economic contribution, arbitration, general provisions, and representations and warranties.

The parties agree to appoint one arbitrator, whose decisions will be binding in all respects. Any arbitrator appointed by the parties must be an attorney who (i) has undergone arbitration training conducted by the American Bar Association or the American Academy of Matrimonial Lawyers and (ii) is in good standing with the State Bar of Texas. The first party requesting arbitration must designate the name of an arbitrator in the request. The other party must then designate the name of an arbitrator. If the parties cannot agree on an arbitrator within fourteen days after either party's written request for arbitration, the two designees must select a qualified arbitrator, who will be designated the sole arbitrator of the dispute. If the parties cannot agree on the ground rules and procedures to be followed during the arbitration proceedings, the arbitrator shall have the sole authority to establish the ground rules and procedures to be followed during the arbitration proceeding. The parties agree to attend the arbitration on the date and at the time and place set by the arbitrator. The cost of arbitration must be borne as the arbitrator directs. The award of the arbitrator will be binding and conclusive on the parties, and a judgment setting forth the arbitration award may be entered in any court of competent jurisdiction.

(Emphasis added.)

Six years after the premarital agreement was signed and while Mahasin was out of town, William signed a statutory durable power of attorney in favor of Atheel. Six weeks later, William was diagnosed with Alzheimer's Disease. Two years later, in July 2015, while Mahasin was recovering from a serious accident, Atheel placed William in a senior assisted-living memory-care facility, where he remains. Disputes arose between Mahasin and Atheel regarding access to William and financial matters, including occupation of the marital residence.

About a year later, Atheel requested arbitration in writing, designated Bruce Wayne Wettman as arbitrator, and informed Mahasin that she had 14 days to

4

"agree to an arbitrator." Mahasin neither replied nor objected to Atheel's designation of Wettman as arbitrator. Atheel filed with the district court an application to compel arbitration designating Wettman as arbitrator. He later amended the application, attaching a copy of the premarital agreement. Mahasin opposed arbitration asserting that Atheel lacked standing to enforce the arbitration clause.

The parties unsuccessfully mediated before Wettman. The trial court granted the amended application to compel arbitration, specifically finding that: (1) the existence of an agreement to arbitrate is undisputed; (2) Mahasin "nevertheless refuses to arbitrate"; (3) "the arbitration agreement contains a delegation clause whereby the parties to the arbitration agreement intend for the arbitrator to decide gateway matters regarding the validity, interpretation or enforceability of the arbitration agreement, and all other legal and factual matters"; and (4) Mahasin failed to raise any valid defenses to the arbitration agreement. The court ordered arbitration "with the designated arbitrator" and retained jurisdiction "to appoint an arbitrator" "should the agreed method of appointment fail."

After arbitration was conducted, Wettman entered an award. Wettman found that when they signed the premarital agreement, Mahasin and William acknowledged that they "had or reasonably could have had full and complete knowledge of property owned by the other party." The arbitrator also found that

5

Mahasin had entered into the premarital agreement knowingly and voluntarily and that she declined to retain independent counsel despite having had the opportunity to do so. The arbitrator found that the marital home was William's separate property because it was "purchased entirely with cash" that was William's separate property. The arbitrator also found that Mahasin had withdrawn nearly $300,000 from an investment account that was solely William's separate property and put the money in other accounts for her personal living expenses. The arbitrator awarded Atheel $172,000 plus 6% postjudgment interest. He also ordered that Mahasin had the right to continue living in the marital home and that Atheel could conduct one inspection per month "at a mutually agreeable date and time." The parties were ordered to pay their own costs and attorneys' fees.

Atheel filed an application with the court to confirm the award. Mahasin objected and sought to vacate the arbitration award. She argued that the arbitrator improperly exceeded his powers under the Texas Arbitration Act by finding that the marital home was William's separate property. She argued that when a spouse uses separate property to acquire real property during a marriage and takes title in both spouses' names, Texas law presumes that the nonpurchasing spouse has received a gift of a one-half interest in the property. She attached a copy of the deed to her objection and application to vacate. Mahasin made no argument about the money transferred from the investment account, and she made no argument

6

about the proper characterization of the property under the parties' premarital agreement.

The trial court entered a final judgment confirming the arbitration award, and Mahasin appealed.

**Analysis**

Mahasin raised seven issues on appeal. Some relate to the order compelling arbitration, and others relate to the final judgment confirming the arbitration award.

## I. Issues relating to the order compelling arbitration

An order compelling arbitration may be reviewed in an appeal from the final judgment. *See Perry Homes v. Cull*, 258 S.W.3d 580, 586 n.9 (Tex. 2008). We review a trial court's ruling on a motion to compel arbitration for an abuse of discretion, deferring to the trial court's factual determinations that are supported by evidence and examining questions of law de novo. *Parker v. Schlumberger Tech. Corp.*, 475 S.W.3d 914, 922 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Arbitration agreements are enforceable as contracts. *See Steer Wealth Mgmt., LLC v. Denson*, 537 S.W.3d 558, 566 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Ordinarily, a party seeking to compel arbitration must show that (1) a valid, enforceable arbitration agreement exists and (2) the claims asserted fall within the scope of that agreement. *Id.* These two factors are referred to as "substantive arbitrability" and are gateway questions to be decided by the court.

*See W. Dow Hamm III Corp. v. Millennium Income Fund, L.L.C.*, 237 S.W.3d 745, 753 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002)). However, "parties have a right to contract as they see fit," and therefore "they may agree to arbitral delegation clauses that send gateway issues such as arbitrability to the arbitrator." *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120–21 (Tex. 2018). "When faced with such an agreement, courts have no discretion but to compel arbitration unless the arbitration clause's validity is challenged on legal or public policy grounds." *Id.* Thus, we first consider whether there is a binding arbitration agreement that delegates gateway questions of substantive arbitrability to the arbitrator. *Id.*

**A.    Whether Atheel could invoke the arbitration clause based on agency principles was a question for the arbitrator.**

In her first issue, Mahasin challenges whether Atheel, who is a nonsignatory to the premarital agreement, can compel arbitration under it. Mahasin concedes that there is an arbitration provision in the premarital agreement, but she argues that Atheel did not sign the premarital agreement and therefore cannot rely on the arbitration provision. She specifically references section 17.12 of the premarital agreement, which provides that the agreement is "personal to the parties" and that "neither party may assign or delegate any of his or her rights or obligations under it." She further references section 17.6 of the premarital agreement, entitled "Successors," which provides that the agreement "binds and inures to the benefit of

the parties and their . . . legal and personal representatives." Mahasin contends that section 17.6 refers exclusively to individuals who may have a future interest upon the death of a spouse.

"As a general rule, 'an arbitration clause cannot be invoked by a non-party to the arbitration contract.'" *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015) (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 532 (5th Cir. 2000)). In some circumstances, including agency, a nonsignatory may be permitted to enforce an agreement to arbitrate. *Id.* A statutory durable power of attorney creates an agency relationship between the principal and the designated holder of the power of attorney. *See* TEX. ESTATES CODE § 751.002(3); *id.* §§ 751.001–753.002 *passim* (durable powers of attorney).

After William signed the premarital agreement, he signed a statutory durable power of attorney appointing Atheel as his agent. This agency relationship afforded him the authority to invoke the arbitration provision. *See G.T. Leach Builders*, 458 S.W.3d at 524. To the extent that Mahasin argues that specific provisions in the premarital agreement would bar any nonsignatory from invoking the arbitration provision, we conclude that those disputes relate to an interpretation of the premarital agreement and would go to arbitration because of the delegation clause.

Mahasin's first issue, arguing that the trial court erred by granting arbitration based on nonsignatory Atheel's motion, is overruled.

**B.  The delegation provision removed the gateway question of substantive arbitrability from the trial court's purview.**

In her second issue, Mahasin asserts that the trial court erred by failing to consider the two substantive arbitrability gateway questions of the existence of a valid arbitration agreement and a dispute within its scope.

Mahasin argues that the premarital agreement was hearsay, and therefore Atheel failed to tender an admissible arbitration agreement. Atheel attached the premarital agreement to his application to compel arbitration and his amended application to compel arbitration, effectively incorporating the pertinent arbitration provision into his pleadings. *See* TEX. R. CIV. P. 59. Accordingly, it was properly before the court.

Mahasin also argues that the premarital agreement was unconscionable when it was made, rendering the arbitration provision unenforceable. She asserts that she could not read English, did not understand what she was signing, and was not provided an interpreter. She also asserts that William failed to disclose all his assets, including valuable offshore accounts.

"[A]rbitrators generally must decide defenses that apply to the whole contract, while courts decide defenses relating solely to the arbitration clause." *Perry Homes v. Cull*, 258 S.W.3d 580, 589 (Tex. 2008). "Classic contract defenses

10

such as unconscionability, illegality and fraudulent inducement" are decided by the arbitrator "if they are alleged only against the contract as a whole." *RSL Funding*, 569 S.W.3d at 124; *see Perry Homes*, 258 S.W.3d at 589 ("[A]rbitrators must decide if an entire contract was fraudulently induced, while courts must decide if an arbitration clause was.").

Mahasin's challenges attack the premarital agreement as a whole; therefore the court properly permitted the arbitrator to resolve these questions. *See RSL Funding*, 569 S.W.3d at 124; *Perry Homes*, 258 S.W.3d at 589. Mahasin also argues that the dispute is not within the scope of the arbitration agreement. In part, she asserts that the language of the arbitration provision applies only to a dissolution proceeding. This is a matter of interpretation, which has been delegated to arbitration.

Accordingly, we conclude that the court did not err by not considering whether the dispute is within the scope of the arbitration agreement, and we overrule Mahasin's second issue.

### C. The trial court did not err by granting the motion to compel arbitration before Wettman.

In her third issue, Mahasin argues that the trial court erred by selecting an arbitrator because the method specified for selecting arbitrators in the premarital agreement was not followed. She argues that because of this, the arbitrator lacked

jurisdiction. The record on appeal does not show that the court selected an arbitrator.

The premarital agreement provides for binding arbitration in accordance with Texas arbitration law. The Texas Arbitration Act provides that the "method of appointment of arbitrators is as specified in the agreement to arbitrate." TEX. CIV. PRAC. & REM. CODE § 171.041(a). The premarital agreement states that "the parties agree to appoint one arbitrator." It provides the following method of appointment:

> The first party requesting arbitration must designate the name of an arbitrator in the request. The other party must then designate the name of an arbitrator. If the parties cannot agree on an arbitrator within fourteen days after either party's written request for arbitration, the two designees must select a qualified arbitrator, who will be designated the sole arbitrator of the dispute.

In September 2016, Atheel requested arbitration in writing in a letter to Mahasin's attorney. In the letter, Atheel designated Bruce Wayne Wettman as arbitrator and stated, "You must agree to an arbitrator within 14 days." Mahasin did not respond the request for arbitration, designate an arbitrator, or object to Wettman serving as arbitrator. Rather, Mahasin refused to arbitrate. In January 2017, Atheel filed a motion to compel arbitration before Wettman as arbitrator. Mahasin continued to oppose arbitration, but she did not designate an arbitrator.

The trial court heard Atheel's motion to compel arbitration over two days in July 2017. At these hearings, Mahasin suggested that she would prefer former Judge Robert Kern due to his experience with family law and because Wettman

12

and Atheel's attorney both were adjunct professors at the same school. On July 13, 2017, the trial court granted the motion to compel, which had identified Wettman as the arbitrator, but the order compelling arbitration did not specifically name Wettman. Instead, the order required Atheel and Mahasin to "promptly and without delay commence arbitration with the designated arbitrator."[2]

Despite Mahasin's assertion on appeal, the trial court did not specifically order the parties to arbitrate before Wettman; the court ordered the parties to arbitrate before "the designated arbitrator." Atheel requested arbitration in writing, designating Wettman, in September 2016. Mahasin did not designate an arbitrator within the time period provided by the premarital agreement. The only arbitrator ever designated was Wettman. The record does not support Mahasin's assertion that the trial court, rather than the parties, selected Wettman as arbitrator. We overrule the third issue.

In her fourth issue, Mahasin asserts that it was improper for Wettman to serve as both mediator and arbitrator. To preserve a complaint for appellate review, a party must first demonstrate that the complaint was made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1. Mahasin did not raise

---

[2]    The trial court stayed the case but retained jurisdiction to appoint an arbitrator pursuant to section 171.041 of the Civil Practice and Remedies Code "should the agreed method of appointment fail." Thereafter the parties arbitrated their claims with Wettman as arbitrator.

this argument in trial court, where she argued only that she "felt there was a bias" because Atheel's counsel and Wettman "both teach at the same college." Because Mahasin makes this argument for the first time on appeal, we hold that it is not preserved. *See* TEX. R. APP. P. 33.1. We overrule Mahasin's fourth issue.

## II.    Issues relating to the order confirming the arbitration award.

Mahasin argues that the trial court erred by confirming the arbitration award. In her fifth issue, Mahasin argues that the court lacked jurisdiction to determine a marital property division while the parties are married. In her sixth issue, Mahasin asserts that Atheel cannot use the power of attorney to avoid William's duty of spousal support. In her seventh issue, she asserts that the arbitrator exceeded his power by ignoring the law and the terms of the premarital agreement by finding that the marital home was the separate property of William. Mahasin maintains that she had a one-half separate property interest in the property because title was taken in both her name and William's name.

We review a trial court's order confirming an arbitration award de novo based on a review of the entire record. *Infinity Capital II, LLC v. Strasburger & Price, LLP*, No. 01-15-00691-CV, 2016 WL 4254137, at *3 (Tex. App.—Houston [1st Dist.] Aug. 11, 2016, pet. denied) (mem. op.); *Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 855 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Unless an arbitration agreement provides for expanded judicial review of an arbitration

award, judicial review of an arbitration award under the TAA is "extraordinarily narrow," *E. Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010), and it is limited to the statutory grounds for modification, correction, or vacatur. *See* Tex. Civ. Prac. & Rem. Code § 171.088(a) (grounds for vacatur)[3]; *id.*

---

[3]     (a) On application of a party, the court shall vacate an award if:

    (1)    the award was obtained by corruption, fraud, or other undue means;

    (2)    the rights of a party were prejudiced by:

        (A)    evident partiality by an arbitrator appointed as a neutral arbitrator;

        (B)    corruption in an arbitrator; or

        (C)    misconduct or wilful misbehavior of an arbitrator;

    (3)    the arbitrators:

        (A)    exceeded their powers;

        (B)    refused to postpone the hearing after a showing of sufficient cause for the postponement;

        (C)    refused to hear evidence material to the controversy; or

        (D)    conducted the hearing, contrary to Section 171.043, 171.044, 171.045, 171.046, or 171.047, in a manner that substantially prejudiced the rights of a party; or

    (4)    there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection.

Tex. Civ. Prac. & Rem. Code § 171.088(a).

15

§ 171.091(a) (grounds for modification or correction of an award)[4]; *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 89–90 (Tex. 2011). Unless such grounds are offered, "the court, on application of a party, shall confirm the arbitration award." TEX. CIV. PRAC. & REM. CODE § 171.087.

Judicial scrutiny of an arbitration award awards "focuses on the integrity of the arbitration process, not on the propriety of the result." *Women's Reg'l Healthcare, P.A. v. FemPartners of N. Tex., Inc.*, 175 S.W.3d 365, 367–68 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see Purse v. DeJesus*, No. 01-17-00855-CV, 2019 WL 237751, at *2 (Tex. App.—Houston [1st Dist.] Jan. 17, 2019, no pet.) (mem. op.). "Review is so limited that a court may not vacate an arbitration award even if it is based upon a mistake of fact or law." *Universal Comput. Sys.,*

---

[4]    (a)    On application, the court shall modify or correct an award if:

   (1)    the award contains:

      (A)    an evident miscalculation of numbers; or

      (B)    an evident mistake in the description of a person, thing, or property referred to in the award;

   (2)    the arbitrators have made an award with respect to a matter not submitted to them and the award may be corrected without affecting the merits of the decision made with respect to the issues that were submitted; or

   (3)    the form of the award is imperfect in a manner not affecting the merits of the controversy.

TEX. CIV. PRAC. & REM. CODE § 171.091(a).

16

*Inc. v. Dealer Sols., L.L.C.*, 183 S.W.3d 741, 752 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *see Jamison & Harris v. Nat'l Loan Inv'rs*, 939 S.W.2d 735, 737 (Tex. App.—Houston [14th Dist.] 1997, writ denied) (alleged errors in application of substantive law by arbitrators during arbitration proceedings was not reviewable on motion to vacate award).

In her fifth, sixth, and seventh issues, Mahasin alleges that the arbitrator made mistakes of law—by determining the character of marital property in the absence of a divorce proceeding, by failing to consider the statutory duty of spousal support, and by mischaracterizing the marital home as William's separate property. All of these are mistakes of law that are not reviewable by a motion to modify, correct, or vacate an arbitration award. *See Universal Comput. Sys.*, 183 S.W.3d at 754; *Jamison*, 939 S.W.2d at 737. In addition, to the extent that any of these issues requires review of arbitration proceedings, Mahasin's failure to provide a record of the arbitration proceedings prevents us from determining whether the arbitrator exceeded his authority. *See Saldana v. Saldana*, No. 01-12-00092-CV, 2013 WL 1928800, at *3 (Tex. App.—Houston [1st Dist.] May 9, 2013, pet. denied) (mem. op.) ("The party seeking to modify or vacate an arbitration award has the burden in the trial court of bringing forth the complete record and establishing the basis for vacating or modifying the award.").

We overrule the fifth, sixth, and seventh issues.

## Conclusion

We affirm the judgment of the trial court.

Peter Kelly
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.