**WOMEN'S REGIONAL HEALTHCARE, P.A., Appellant,**

v.

**FEMPARTNERS OF NORTH TEXAS, INC. and FemPartners, Inc., Appellees.**

No. 01–03–00584–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 10, 2005.

Carl Dawson, Ryan & Dawson, Houston, TX, for Appellant.

Derrick Carson, S. Shawn Stephens, Charlie Baumann, Locke Liddell & Sapp, LLP, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

EVELYN V. KEYES, Justice.

This is an appeal of the trial court's confirmation of an arbitration award of $805,927.39 to appellees, FemPartners of North Texas, Inc. and FemPartners, Inc. In two issues, appellant, Women's Regional Healthcare, P.A. (WRH), contends that the contract that contained an arbitration provision was illegal because it violated the unauthorized-corporate-practice-of-medicine doctrine and, therefore, the arbitration clause was unenforceable because it was included in an illegal contract. We affirm.

## Background

FemPartners is a company that acquires the assets of obstetrics and gynecological practices to operate and to manage those practices. In September 1999, FemPartners and WRH entered into a contract to which each party refers as a "Service Agreement." FemPartners was appointed the sole and exclusive manager of all non-medical functions and services related to the acquired clinic. Under the terms of the agreement, FemPartners agreed to provide office space and facilities, clinic supplies, support personnel, physician recruiting services, administrative management services, billing and collection services, legal and accounting services, and financial advisory services, for which it would receive 20% of the clinic's net revenues. FemPartners was also authorized to recommend fees in connection with the goods and services provided by WRH, and to market, negotiate, and administer all managed care contracts. However, FemPartners was expressly prohibited from exercising control over the physician-patient relationship, and only WRH was authorized to practice medicine, hire physicians, or document patient care. WRH also expressly retained "absolute and independent control over the diagnosis and treatment of patients and all other medical and ethical affairs."

After a dispute arose between the parties, WRH demanded arbitration in July 2002 in accordance with the arbitration clause in its service agreement with FemPartners. WRH sought damages and termination of the contract. FemPartners counterclaimed, contending that WRH had breached the contract and was not entitled to termination. Over two years later, on the eve of the arbitration hearing, WRH filed a response to FemPartners' counterclaim, contending for the first time that the service agreement was illegal. After considering evidence regarding both the legality of the contract and the alleged breaches by both parties, the arbitration panel awarded FemPartners damages. FemPartners filed an application in the trial court to confirm the award pursuant to section 171.082 of the Civil Practices and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 171.082(a) (Vernon Supp. 2004–2005). WRH responded by filing a

motion to vacate the award pursuant to section 171.088 of the Code. *Id.* § 171.088 (Vernon Supp.2004–2005) (specifying grounds for vacation of arbitration awards). The trial court confirmed the award, and this appeal ensued.

WRH argues that the contract containing the arbitration provision was void because it violated the unauthorized-corporate-practice-of-medicine doctrine; thus, there was no enforceable arbitration clause and, since the arbitration clause was unenforceable, the court had to return the parties to the status quo prior to the arbitration. FemPartners contends that WRH has waived any complaint because WRH initiated the arbitration and never objected to it. FemPartners also argues that WRH did not assert a proper statutory basis for vacating the award. We first consider whether WRH has properly asserted a statutory basis to vacate the arbitration award.

## Discussion

### *Vacation of Arbitration Award Under Section 171.088(a)(4)*

Unless a party relies on a statutory basis to vacate an arbitration award, the trial court must affirm the award. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.087 (Vernon Supp.2004–2005); *Jamison & Harris v. Nat'l Loan Investors,* 939 S.W.2d 735, 737 (Tex.App.-Houston [14th Dist.] 1997, pet. denied). Under section 171.088 of the Civil Practices and Remedies Code, a court may vacate an arbitration award under only four circumstances: (1) the award was procured by fraud, corruption, or other undue means; (2) there was evident partiality, corruption, or willful misconduct by the arbitrator that prejudices the rights of a party; (3) the arbitrator exceeded its power, refused to

postpone the hearing on good cause shown, or refused to hear evidence; or (4) "there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection."[1] *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.088(a).

[1] On appeal, WRH relies upon the last statutory ground for vacatur, arguing that (1) there was no valid arbitration agreement, (2) the issue was not adversely determined in proceedings to stay or compel arbitration, and (3) it did not participate in the arbitration without raising the objection that there was no valid arbitration agreement. In sum, WRH argues that there was no agreement to arbitrate because the service agreement containing the arbitration agreement was illegal, the issue of whether there was a valid agreement to arbitrate was not decided pursuant to a motion to stay or compel arbitration, and WRH raised the issue of the illegality of the service agreement in the arbitration. We disagree with WRH's contention that it has satisfied the criteria for seeking vacatur of the arbitration award under section 171.088(a)(4).

In construing a statute, we must give effect to the plain meaning unless to do so would render the statute absurd or meaningless. *Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987); *Mueller v. Beamalloy, Inc.,* 994 S.W.2d 855, 860 (Tex. App.-Houston [1st Dist.] 1999, no pet.). The arbitration statute is written in such a way as to ensure that an arbitration award is set aside only in limited circumstances. *Monday v. Cox,* 881 S.W.2d 381, 384 (Tex. App.-San Antonio 1994, writ denied). Because we must accord great deference to arbitration awards, judicial scrutiny of

**1.** Subchapter B governs motions and pro-      ceedings to compel or stay arbitration.

these awards focuses on the integrity of the arbitration process, not on the propriety of the result. *Tuco, Inc. v. Burlington N. R.R. Co.*, 912 S.W.2d 311, 315 (Tex. App.-Amarillo 1995), *modified on other grounds*, 960 S.W.2d 629 (1997). In interpreting section 171.088(a)(4), therefore, we focus on the integrity of the arbitration process.

Section 171.088(a)(4) provides that a court may vacate an arbitration award when *"there was no agreement to arbitrate*, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection." TEX. CIV. PRAC. & REM.CODE ANN. § 171.088(a) (emphasis added). An objection to the validity of a contract containing an agreement to arbitrate as a whole does not satisfy the statute. Rather, if the parties' dispute arises from a contract containing an arbitration clause, a challenge to the contract as a whole—as opposed to a challenge specific to the arbitration clause itself—must be resolved by the arbitrators. *See In re David's Supermarkets, Inc.*, 43 S.W.3d 94, 98 n. 7 (Tex. App.-Waco 2001, no pet.) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967)). The general principle was first enunciated by the United States Supreme Court in *Prima Paint*, 388 U.S. at 403–04, 406, 87 S.Ct. at 1806, 1807 (holding that statutory language of Federal Arbitration Act does not permit court to consider claims of fraud in inducement generally, but only fraud in inducement of arbitration clause itself). The United States Court of Appeals for the Fifth Circuit has explained the rule in language we find persuasive:

> [W]here parties have formed an agreement which contains an arbitration clause, any attempt to dissolve that agreement by having the entire agreement declared voidable or void is for the arbitrator. Only if the arbitration clause is attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator.
>
> . . . .
>
> [T]he separability doctrine rests on the assumption that there is an underlying agreement. That one of the parties later disputes the enforceability of that *agreement* does not change the fact that at some point in time, the parties reached an agreement, and that agreement included the decision to arbitrate disputes arising out of the agreement. The existence of this agreement provides the arbitrator with the authority required to decide whether the agreement will continue to exist. Even if the arbitrator concludes that the agreement was void, and the parties are returned to their pre-agreement positions *as if* the agreement never existed, the agreement existed long enough to give the arbitrator the power to decide the dispute.

*Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218–19 (5th Cir.2003) (emphasis in original) (citations omitted).[2]

---

2. This Court has previously pointed out that the language in the Texas Arbitration Act governing the submission of disputes to arbitration is identical in relevant part to the language in the Federal Arbitration Act construed by the federal courts. *Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 932 (Tex.App.-Houston [1st Dist.] 1996, no writ). The Texas Arbitration Act provides:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

From the plain language of the statute, read in light of the separability doctrine, we conclude that, to preserve its right to appeal the arbitration award under section 171.088(a)(4) of the Civil Practice and Remedies Code, WRH was required to object specifically to the arbitration itself on the ground that there was never any *agreement to arbitrate* between the parties. *See id.* § 171.088(a)(4). This it did not do.

**Propriety of Appeal of Arbitral Award in Favor of FemPartners Under Section 171.088(a)**

█ The record in this case shows that, although WRH raised the issue of the *service agreement's* illegality before arbitration commenced, WRH did not allege prior to the arbitration that no agreement to arbitrate had ever existed; nor did it allege in its arbitration claim that the arbitration clause was invalid under general principles of contract law applicable to every contract; nor did it object to participating in the arbitration on the ground that there was no agreement to arbitrate. Rather, the parties acknowledged their agreement to arbitrate by WRH's own invocation of the arbitration clause in the service agreement and FemPartners' failure to object to submission of the dispute to arbitration. WRH itself initiated the arbitration proceeding pursuant to the arbitration clause in the service agreement, and it alleged in its amended arbitration pleadings that the *service agreement as a whole* was unenforceable under the substantive statutory law applicable to the dispute, the Medical Practices Act—not that the *arbitration clause* was void. It argued, "the contractual agreement between [the parties] is void and unenforceable because it violates the Texas Medical Practice Act as FemPartners is engaged in the unauthorized corporate practice of medicine." The question of the validity of the contract as a whole was a legal issue for the arbitrators to decide; and they decided it. *See David's Supermarkets,* 43 S.W.3d at 98 n. 7. We hold that WRH failed to satisfy the statutory criteria for setting aside the award under section 171.088(a)(4) of the Civil Practice and Remedies Code.[3]

### Conclusion

Because our ruling on this issue is dispositive, we decline to address WRH's remaining issues.

We affirm the trial court's judgment.

█

TEX. CIV. PRAC. & REM.CODE. § 171.001 (Vernon 1995); *see also* 9 U.S.C.A. § 2 (1997).

**3.** Were we to interpret subsection 171.088(a)(4) as permitting the losing party to an arbitration to assert the illegality of the agreement as grounds to vacate the award, even though it did not object to the arbitration proceeding before it began, we not only would be flouting the plain meaning of the statute and the separability doctrine, we would be inviting every party to an arbitration to plead the illegality of the contract containing the arbitration clause, rather than the illegality of the arbitration clause itself, as an escape hatch should it obtain an unfavorable result in arbitration. We do not believe that, in enacting subsection 171.088(a)(4), the Legislature intended to install a swing hinge on the arbitration door.