

# NUMBER 13-13-00711-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**OCTAVIO RAYA,** **Appellant,**

**v.**

**RIO MANAGEMENT COMPANY,**
**LLC AND WYATT HIDALGO FARMS, INC.,** **Appellees.**

**On appeal from the County Court at Law No. 4**
**of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes**
**Memorandum Opinion by Justice Benavides**

By four issues, appellant, Octavio Raya, appeals the trial court's confirmation of the arbitrator's take-nothing judgment in favor of appellees, Rio Management Company, L.L.C. ("Rio") and Wyatt Hidalgo Farms, Inc. ("Wyatt"). Raya raises four issues on appeal challenging the trial court's grant of Rio's summary relief: (1) Rio omitted the

premises owner, Wyatt Hidalgo Farms, Inc. ("Wyatt"), from the arbitration agreement thereby precluding arbitration; (2) a corporate relationship is insufficient to bind a non-signatory to an arbitration agreement; (3) Raya did not intend to bind himself to arbitration in regard to personal injury claims against Wyatt; and (4) the trial court improperly granted the arbitration award.   We affirm.

## I. BACKGROUND

Raya was employed by Rio on October 30, 2008, and signed an arbitration agreement ("the arbitration agreement") that went into effect in 2009.   Rio and Wyatt are affiliated companies that share common ownership, directors, and management; however, it is undisputed that Raya was solely employed by Rio.[1]

On August 19, 2010, while at work, Raya attempted to step down from a concrete slab.   Instead, he stepped onto a loose chunk of concrete, which caused him to twist his knee and fall to the ground.   According to his pleadings, Raya sustained serious bodily injury to his knees, back, and body; he further claimed that this caused him physical impairment, pain, and mental anguish.   Because the accident occurred on Wyatt's property, Raya sued Rio for the injuries he sustained in the course and scope of his employment and Wyatt under a premises liability cause of action.   Pursuant to the arbitration agreement signed by Rio and Raya, Rio and Wyatt moved to compel arbitration on February 7, 2012, urging the trial court to apply the Federal Arbitration Act (FAA).   Although Raya did not object to arbitrating his claims against Rio, Raya claimed that Wyatt

---

[1] Rio is a non-subscriber under the Texas Worker's Compensation Act.   As a non-subscriber, Rio is not covered by workers' compensation insurance, and, thus, may be potentially responsible for work-related injuries under the common-law principles of negligence. *See* TEX. LABOR CODE ANN. § 406.033 (West, Westlaw through Ch. 46 2015 R.S.).

was not a party to the arbitration agreement because the agreement refers to "Wyatt Farms Inc." not "Wyatt Farms Hidalgo." In effect, Raya argued that Rio never agreed to arbitrate with Wyatt. In response, Rio argued a misnomer and asserted that "Wyatt Farms, Inc." meant "Wyatt Hidalgo Farms, Inc." As proof, Rio submitted the affidavit of Rio's Human Resources and Safety Director, Erasmo Lopez, explaining the misnomer. Alternatively, Rio argued that all disputes against Wyatt should be arbitrated because Wyatt is an affiliated entity of Rio. Raya offered no evidence to dispute Rio's alternate contention.

On May 7, 2012, the trial court signed an order granting the motion to compel arbitration and abated the case. At arbitration, Rio and Wyatt prevailed on their own separate motions for summary judgment. As a result of Rio's motion for summary judgment, the arbitrator rendered Raya a take-nothing judgment. Subsequently, Rio filed a motion to confirm the take-nothing judgment with the trial court. Raya filed no response to Rio's motion. On September 9, 2013, the trial court confirmed the take-nothing judgment award. Similarly, because the arbitrator ruled in favor of Wyatt's motion for summary judgment, the arbitrator also rendered a take-nothing judgment, which the trial court also confirmed on September 9, 2013. Subsequently, Raya filed a motion for new trial, but it was overruled. This appeal followed.

## II. ARBITRATION AGREEMENT

By his first issue, Raya argues that he never agreed to arbitrate his workplace injury claim with Wyatt because Wyatt was not a party to the arbitration agreement. By his second issue, Raya asserts that a corporate relationship is insufficient to bind a non-signatory to an arbitration agreement. By his third issue, Raya claims that the arbitration

3

agreement should be enforced exactly as written. Thus, Raya did not intend to bind himself to arbitration with Wyatt because the language of the contract does not reference Wyatt Hidalgo. Because these issues are related, we will address them together.

## A. Standard of Review

We examine a trial court's decision to confirm or vacate an arbitration award de novo. *Forest Oil Corp. v. El Rucio Land & Cattle Co., Inc.*, 446 S.W.3d 58, 75 (Tex. App.—Houston [1st Dist.] 2014) (pet. filed). Whether an arbitration agreement is enforceable is also subject to de novo review. *In re Labatt Food Service, L.P.,* 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). We examine the entire record in making such review. *Forest Oil,* 446 S.W.3d at 75. Under the FFA, the court determines whether an arbitration agreement binds a nonsignatory unless the parties clearly and unmistakably provide otherwise. *In re Labatt*, 279 S.W.3d at 644. Because this arbitration agreement is silent about who is to determine whether nonsignatories are bound, we will determine the issue.

## B. Applicable Law

Generally, state law governs whether a litigant agreed to arbitrate. *Id.* In this regard, the FFA may bind nonsignatories to an agreement when rules of law or equity would bind them to the contract generally. *Id.* Under the FFA, a presumption exists in favor of agreements to arbitrate. *Id.*; *see Prudential Secs. Inc. v. Mars*hall, 909 S.W.2d 896, 898 (Tex. 1995). As a result, judicial review of an arbitration award is extraordinarily narrow. *Black v. Shor*, 443 S.W.3d 154, 161 (Tex. App.—Corpus Christi 2013, pet. denied). Because review of an arbitration award is so limited, not even a mistake of fact or law by the arbitrator is a proper ground for vacating an award. *Forest Oil,* 466 S.W.

4

3d at 75; *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002) (holding that "an award of arbitrators upon matters submitted to them is given the same effect as the judgment of a court of last resort."). In this regard, every reasonable presumption is indulged in favor of the arbitrator. *Forest Oil,* 466 S.W. 3d at 75. Consequently, we will resolve any doubts about an agreement to arbitrate in favor of arbitration. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005). Therefore, our role is to decide whether the parties made a valid and presently enforceable agreement to arbitrate. *See* TEX. CIV. PRAC. & REM. CODE § 171.021(b); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502 (Tex. 2015).

Generally, a party seeking to compel arbitration must establish that there is a valid arbitration agreement and that the claim falls within that agreement's scope. *Kellogg,* 166 S.W.3d at 737. Ordinary principals of contract law determine whether there is an agreement to arbitrate. *Id.* at 738. The following elements are required for the formation of a valid and binding contract: (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the term; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Cessna Aircraft Co. v. Aircraft Network*, L.L.C., 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied). Like other contracts, an agreement to arbitrate must be supported by consideration. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 676; *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex.2005) (per curiam). An employer attempting to enforce an arbitration agreement must show that the agreement meets all requisite contract elements. *Id.*

5

A misnomer in an arbitration agreement occurs when a party misnames itself or another party, but the correct parties are involved. *See Brown v. Lanier Worldwide, Inc.* 124 S.W.3d 883, 895 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Under the theory of misnomer, a misnomer does not render a judgment void "provided the intention to sue the correct defendant is evident from the pleadings and process, such that the defendant could not have been misled". *Charles Brown, L.L.P. v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 895 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Courts generally allow parties to correct a misnomer so long as it is not misleading. *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325–26 (Tex. 2009). Under the FAA, absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms. *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005). In this light, arbitration agreements are enforced according to their terms and the intentions of the parties. *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 210 (Tex. 2007).

## C. Discussion

Raya argues that Rio failed to include Wyatt in the arbitration agreement; therefore, resolution by arbitration should have been precluded. We disagree.

More specifically, Raya argues that the company name "Wyatt Farms Inc.," which is found in the arbitration agreement, is patently different from "Wyatt *Hidalgo* Farms, Inc." and not a party to this suit (emphasis added). He uses this Court's holding in *Loop Cold Storage Management Company v. Ibarra* to support his contention. 2011 WL 2463067, at *5 (Tex. App.—Corpus Christi June 16, 2011, no pet.) (mem. Op., not designated for publication). In *Ibarra*, while Loop Cold Storage Management Company ("Company")

6

and Loop Cold Storage McAllen, L.P. ("Storage") were the parties that filed a notice of appeal, it was undisputed that neither of those parties filed the motion to compel arbitration in the trial court. *Id.* at *4. Therefore, we held that because neither Company nor Storage were denied arbitration by the court each lacked standing to seek appellate review. *Id.* at *5. Further, we held that Storage failed to show that Company—the named party in the arbitration agreement—did not exist prior to filing its notice of appeal. *Id.*

We find *Ibarra* distinguishable. In this case, standing is not implicated because Wyatt is a party to this appeal. Additionally, unlike in *Ibarra*, Rio presented evidence of the misnomer error for the trial court's consideration prior to the trial court's affirmation of the arbitration award. Namely, Rio's evidence showed that "Wyatt Farms"—the named party in the arbitration agreement—was a misnomer for Wyatt Hidalgo. Nonetheless, the trial court ordered that Raya's claims against Wyatt would proceed to arbitration, regardless of the misnomer. Accordingly, Raya's reliance on *Ibarra* is misplaced, and his contention that Wyatt Hidalgo is patently different than Wyatt Farms does not negate his acceptance of the contract terms.

The arbitration agreement, in relevant part, defines "company" as a party to the arbitration agreement as an "entity (ies) and person(s) set forth on Schedule A." Schedule A, which was attached to the arbitration agreement, included "Wyatt Farms, Inc." and "Wyatt Ranches," as well as "all employees, officers, directors, agents, franchisors, franchisees, successors, representatives, predecessors, affiliated or related entities or companies of the entity(ies) and/or person(s) listed in Schedule A." We conclude that this provision included Wyatt as a party to the arbitration agreement

7

because it is undisputed that it is an affiliated entity of Rio.

Even assuming arguendo that Wyatt Farms is not a misnomer and that Rio intended to bind itself with a remote Wyatt Farms (which Rio has no affiliation with whatsoever), arbitration is still enforceable because Wyatt is an affiliate of Rio.[2] The undisputed record shows that Rio and Wyatt are affiliated companies that share common ownership, directors, and management. The arbitration agreement included "all employees, officers, directors, agents, franchisors, franchisees, successors, representatives, predecessors, *affiliated* or *related entities* or *companies*" of Rio (emphasis added). More importantly, Raya did not dispute that Wyatt was an affiliated entity of Rio and was, therefore, able to compel arbitration. Rather, Raya's position is encapsulated by the fact that the arbitration agreement included the name Wyatt Farms rather than Wyatt Hidalgo. Hence, Wyatt's affiliation with Rio went undisputed by Raya. Notwithstanding the entities expressly named in the arbitration agreement, the trial court granted the arbitration award and confirmed the take-nothing judgment in favor of Wyatt. Furthermore, Raya has not asserted, nor does he argue on appeal, that there was fraud, deceit or misrepresentation involved in his signing of the agreement. As a result, he is bound by the agreement. *See In re Palm Harbor Homes, Inc.* 195 S.W.3d 672, 676 (Tex. 2006).

Therefore, because we conclude that Wyatt is an affiliate of Rio, or alternatively because a misnomer does not render an arbitration agreement unenforceable, we

---

[2] After a Secretary of State Office search, Raya acknowledges that the only registered companies by the name of Wyatt Farms are located in South Carolina and Virginia, which are not associated with Rio. "Wyatt Farms" is not registered in the State of Texas.

8

overrule Raya's first, second, and third issues.

## III. ARBITRATION AWARD

By his final issue, Raya argues that the trial court improperly granted the arbitration award. Specifically, Raya argues that trial court improperly granted summary judgment in favor of Wyatt based on the arbitrator's take-nothing judgment as to Rio.[3]

### A. Standard of Review

Although we review de novo a trial court's judgment confirming an arbitration award, we give "strong deference to the arbitrator with respect to issues properly left to the arbitrator's resolution." *Black*, 443 S.W.3d at 162 (citing *Xtria L.L.C. v. Int'l Ins. Alliance Inc.*, 286 S.W.3d 583, 591 (Tex. App.—Texarkana 2009, pet. denied)). Our review focuses on the integrity of the process, not the propriety of the result. *Id.*; *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 826 (Tex. App.—Dallas 2009, no pet.); *Women's Reg'l Healthcare, P.A. v. FemPartners of N. Tex., Inc.*, 175 S.W.3d 365, 367–68 (Tex. App.—Houston [1st Dist.] 2005, no pet.). In this case, the parties' agreement does not "contain a provision allowing for an expanded judicial review of the arbitrator's decision, so our review is limited to determining whether the matters the arbitrator decided were within the scope of the parties' agreements to arbitrate." *Black*, 443 S.W.3d at 162.

---

[3] The record indicates that the trial court did not grant Wyatt summary judgment as Raya asserts. Rather, the trial court confirmed two separate take-nothing awards in favor of Rio and Wyatt. Thus, the trial court merely affirmed the arbitrator's take-nothing judgment in favor of Wyatt and did not independently rule on the merits of Wyatt's summary judgment that was raised before the arbitrator. As a result, we do not construe Raya's argument as a challenge to the arbitration award as set forth in sections 10 and 11 of the United States Code. *See* 9 U.S.C.A. § § 10, 11 (West, Westlaw through Ch. 46 2015 R.S.).

## B. Discussion

In the instant case, the agreement expressly requires arbitration of all claims that arise from: "any injury suffered by Claimant while in the Course and Scope of Claimant's employment with Company, including but not limited to. . . all claims for personal injuries." Also, the agreement defines the "scope of employment" to include:

> an activity of any kind or character that has to do with and originates in the work, business, trade or profession of an employer. . . while engaged in or about the furtherance of the business of an Employer, including activities conducted on the premises of an Employer or at other locations designated by the Employer.

Thus, we hold that this language evinces a personal injury claim that sufficiently falls within the scope of the arbitration provision, and is thus subject to arbitration. *See In re ReadyOne Industries, Inc.* 294 S.W.3d 764, 770 (Tex. App.—El Paso 2009, orig. proceeding). Having concluded Raya's claim fall within the scope of the arbitration agreement, we overrule his last issue.

## V. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Delivered and filed the
23rd day of July, 2015.

10