**Opinion issued August 7, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00624-CV

———————————

**BEVERLY BROOKS, Appellant**

**V.**

**KIRKENDALL DWYER, LLP, Appellee**

On Appeal from the 234th District Court
Harris County, Texas
Trial Court Case No. 2022-43011

## MEMORANDUM OPINION

This is an appeal from the trial court's confirmation of an arbitration award. The award resolves a law firm's fee dispute against a former client in favor of the law firm. The former client now argues that we should vacate the arbitration award because the arbitrator exceeded his powers. We disagree and affirm.

## Background

This case arises out of Kirkendall Dwyer, LLP's representation of Beverly Brooks in a lawsuit against Metropolitan Transit Authority of Harris County, Texas (Metro) for injuries Brooks sustained while riding a Metro bus. That suit was filed in the 269th District Court of Harris County (the Metro Litigation).[1] In connection with the Metro Litigation, Brooks and Kirkendall Dwyer entered into a contingent fee agreement. It provided that Kirkendall Dwyer would recover 45% of the "gross sum collected on [Brooks's] behalf . . . in the event trial is commenced."[2] The fee agreement also stated that if costs and expenses were advanced by Kirkendall Dwyer, it "shall be reimbursed from that portion of any recovery that is payable to [Brooks] after deduction of [Kirkendall Dwyer's] contingent fee." And the fee agreement contained an arbitration clause.

---

[1]    *See Brooks v. Metro. Transit Auth. of Harris Cnty.*, Cause No. 2013-19862, in the 269th District Court of Harris County, Texas.

[2]    We note that this fee agreement contains sensitive data of Brooks. Kirkendall Dwyer attached an unredacted copy of this fee agreement in its appendix to its appellee's brief in this Court in violation of Texas Rule of Appellate Procedure 9.9. We struck Kirkendall Dwyer's brief and ordered it to refile its brief and appendix in compliance with Rule 9.9. It did so.

But in our review of the appellate record, we discovered that the unredacted fee agreement—containing Brooks's sensitive data—was also attached to several filings (by *both* Brooks and Kirkendall Dwyer) in the underlying case, in clear violation of Texas Rule of Civil Procedure 21c. We note this here so that the parties can take the appropriate steps to remove this sensitive data from the trial court's record—and be in compliance with Rule 21c.

As lead counsel, Alexander Dwyer represented Brooks in the Metro Litigation—which proceeded to trial in August 2015. The trial lasted several days and the jury ultimately awarded Brooks $288,000.00, which exceeded the statutory cap of $100,000.00 that could be recovered from Metro.

The trial court entered a judgment in favor of Brooks for $100,000, but did not award post-judgment interest. *See Metro. Transit Auth. of Harris Cnty. v. Brooks*, No. 01-16-00158-CV, 2018 WL 1003520, at *2 (Tex. App.—Houston [1st Dist.] Feb. 22, 2018, no pet.) (mem. op.). Both Metro and Brooks appealed, and this Court modified the trial court's judgment to include an award of post-judgment interest and affirmed the judgment as modified. *Id.* at *5–6. However, after the appeal, the parties continued to dispute the amount of post-judgment interest Metro owed on the judgment.

Following trial, Brooks expressed concerns regarding the expenses Kirkendall Dwyer incurred in its representation of her. And, thereafter, the relationship between Brooks and Kirkendall Dwyer began to deteriorate. Brooks ultimately terminated her attorney-client relationship with Kirkendall Dwyer on August 5, 2020.

About a year later, Metro and Brooks (represented by her current counsel) settled the Metro Litigation at mediation for $132,414.00. Metro deposited this amount into the registry of the 269th District Court in full satisfaction of Brooks's judgment. Brooks then moved to withdraw the full amount from the registry, but

3

Kirkendall Dwyer intervened and objected to Brooks's motion to withdraw, citing its "contractually vested interest for its attorneys' fees associated with the funds that [Brooks] wishes to have withdrawn from the court's registry."

In January 2022, the trial court granted Brooks's motion in part and ordered that the amount of undisputed funds—$30,811.07—be distributed to Brooks, with the remainder representing the amount of the disputed attorney's fees and expenses—$101,602.93—to remain in the court's registry.

Shortly thereafter, Kirkendall Dwyer filed its demand for arbitration with the American Arbitration Association.[3]  In its statement of claim, Kirkendall Dwyer asserted a claim for breach of contract based on Brooks's failure to pay the attorney's fees and expenses required by the parties' fee agreement.  While the arbitration was pending, Brooks sued Kirkendall Dwyer in the underlying cause number in the 234th District Court of Harris County for legal malpractice, breach of fiduciary duty, breach of contract, DTPA violations, and emotional distress.  Kirkendall Dwyer moved to compel those claims to arbitration before the existing arbitration proceeding.  The trial court granted the motion to compel.

---

[3]  Due to a misnomer, the demand for arbitration was incorrectly filed by Dwyer in his individual capacity.  Brooks moved to dismiss for lack of jurisdiction based on this misnomer.  In its statement of claim, Kirkendall Dwyer addressed the misnomer issue (as instructed to do by the arbitrator) and substituted itself as the correct claimant in place of Dwyer, individually.  The arbitrator found that Kirkendall Dwyer was properly substituted as the claimant and denied Brooks's motion to dismiss.

4

The arbitration hearing took place on April 17–18, 2023. Only Kirkendall Dwyer's breach-of-contract claim against Brooks was heard at the arbitration hearing—as the arbitrator suspended Brooks' affirmative claims shortly before the arbitration hearing due to her inability to pay her share of the arbitration fees.

The arbitrator entered an award in favor of Kirkendall Dwyer on June 20, 2023. It awarded Kirkendall Dwyer damages in the amount of $100,032.93 against Brooks for its attorney's fees in the Metro Litigation, $28,170.00 in attorney's fees and costs as the prevailing party in the arbitration proceeding, and $22,480.00 in damages for administrative fees and expenses of the arbitration proceeding.

The next day, Kirkendall Dwyer filed an application for confirmation of the arbitration award. Brooks moved to vacate the award. The trial court denied Brooks's motion to vacate and signed a final judgment confirming the arbitration award of $150,682.93 on August 28, 2023.[4] Brooks then moved to modify the final judgment, and that was also denied by the trial court. This appeal ensued.

---

[4] The trial court initially signed a final judgment confirming the award on August 23, 2023. But the trial court voided that judgment on August 28 and signed a new final judgment that same day.

5

**Waiver of Right to Arbitration**

Brooks initially argues that Dwyer, on behalf of Kirkendall Dwyer, expressly waived the right to arbitration. We disagree.

## A.     Standard of Review and Applicable Law

When the relevant facts are undisputed, whether a party has waived its right to arbitrate is a question of law that we review de novo. *See Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 545 (Tex. 2014) (per curiam).

"There is a strong presumption against waiver of arbitration." *Perry Homes v. Cull*, 258 S.W.3d 580, 584 (Tex. 2008). "[C]ourts should resolve any doubts as to the agreement's scope, waiver, and other issues unrelated to its validity in favor of arbitration." *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011).

Waiver is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *LaLonde v. Gosnell*, 593 S.W.3d 212, 218–19 (Tex. 2019) (quoting *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 391 (Tex. 2014)). "The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Waiver must be intentional. *In re Bank One, N.A.*,

6

216 S.W.3d 825, 827 (Tex. 2007) (orig. proceeding). Waiver may be express or implied. *See Perry Homes*, 258 S.W.3d at 593.

Express waiver occurs when a party clearly repudiates or relinquishes its right of arbitration. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015) (stating that express waiver occurs through "clear repudiation of the right" to arbitrate). In the context of an arbitration provision, express waiver occurs "when a party affirmatively indicates that it wishes to resolve the case in the judicial forum, rather than through arbitration." *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 39 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

## B.    Analysis

In support of her position that Kirkendall Dwyer expressly waived arbitration, Brooks primarily points to an email her counsel received from Dwyer a year before Kirkendall Dwyer filed its demand for arbitration, in which Dwyer stated: "I'm also happy to waive the arbitration clause and go to bench trial or jury trial."[5]

---

[5]    Brooks also states in her brief that Dwyer made a similar statement at a September 16, 2021 status conference before the 269th District Court where the Metro Litigation was pending. But Brooks's citations to the clerk's record in support of this argument are not to the transcript of the status conference itself; rather, they are to her own filings in the trial court and in the arbitration. And based on our own review of the record, the transcript from that status conference, which occurred before a separate trial court in a separate proceeding, is not in our appellate record. Accordingly, Brooks has not presented anything for our review with respect to whether this alleged statement constitutes an express waiver.

7

We do not agree that this statement rises to the level of an express waiver. First, when put in context of the remainder of Dwyer's statements, it is clear that it was conditioned on Brooks selecting a tribunal to resolve the fee dispute and agreeing that the decision from that tribunal would be final and binding. Dwyer states: "I will submit to whatever tribunal Ms[.] Brooks agrees is final. I'm also happy to waive the arbitration clause and go to bench trial or jury trial. You pick the tribunal so long as she agrees it's final and binding." The record does not demonstrate that Brooks responded in agreement, or at all. This conditional offer is not sufficient to constitute an express waiver of Kirkendall Dwyer's right to arbitration. *See, e.g.*, *Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 22 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (concluding that law firm's statement, "[w]e're not asking for a continuance, and if you say we're going to trial . . . we'll commit we're going to trial," was conditional and therefore not an express waiver of law firm's right to arbitrate).

Moreover, acts that are merely "inconsistent with an intent to exercise the right to arbitrate" are not sufficient to demonstrate an express waiver of the right to arbitrate. *See G.T. Leach Builders*, 458 S.W.3d at 511. For example, in *G.T. Leach Builders*, the Texas Supreme Court held that while requesting and agreeing to a new trial date could be inconsistent with exercising a right to arbitration, these actions "do not constitute an *express* waiver of that right." *Id.*

8

The same is true here. Dwyer's statement was clear that Kirkendall Dwyer would "submit to whatever tribunal"—including arbitration—"so long as [Brooks] agrees it's final and binding." While Dwyer's statement that he would be "happy to waive the arbitration clause" could be viewed as inconsistent with exercising a right to arbitration, this statement did not expressly waive that right, especially when considering that it was conditioned on Brooks selecting a tribunal that she would agree was final—which could have included arbitration.

Accordingly, we hold that Kirkendall Dwyer did not expressly waive its right to arbitration. *See id.*; *see also Branch Law Firm*, 532 S.W.3d at 22.

## Confirmation of Arbitration Award

Brooks next argues that the trial court erred in confirming the arbitration award, and denying her request to vacate the award, because the arbitrator exceeded his powers. According to Brooks, the arbitrator (1) disregarded the terms of the parties' fee agreement, (2) failed to provide a reasoned award, and (3) awarded attorney's fees and costs to Kirkendall Dwyer in absence of evidence. Again, we disagree.

### A. Standard of Review

We review a trial court's decision to vacate or confirm an arbitration award de novo based on a review of the entire record. *See Port Arthur Steam Energy LP v. Oxbow Calcining LLC*, 416 S.W.3d 708, 713 (Tex. App.—Houston [1st Dist.] 2013,

9

pet. denied). Because judicial review "adds expense and delay, thereby diminishing the benefits of arbitration as an efficient, economical system for resolving disputes," review of an arbitration award is extraordinarily narrow. *See CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002); *E. Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010). An arbitration award is presumed valid and is entitled to great deference. *Royce Homes, L.P. v. Bates*, 315 S.W.3d 77, 85 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Under this standard of review, every reasonable presumption must be indulged to uphold an arbitrator's decision, and none is indulged against it. *Id.* Judicial scrutiny of these awards focuses on the integrity of the arbitration process, not on the propriety of the result. *Women's Reg'l Healthcare, P.A. v. FemPartners of N. Tex., Inc.*, 175 S.W.3d 365, 367–68 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Accordingly, a trial court may not vacate an arbitration award even if it is based upon a mistake of fact or law. *Royce Homes*, 315 S.W.3d at 86.

An arbitration award has the same effect as a judgment of a court of last resort, and a reviewing court may not substitute its judgment for that of the arbitrator merely because it would have reached a different result. *See CVN Grp.*, 95 S.W.3d at 238; *J.J. Gregory Gourmet Servs., Inc. v. Antone's Imp. Co.*, 927 S.W.2d 31, 33 (Tex. App.—Houston [1st Dist.] 1995, no writ). A party seeking to vacate an arbitration award bears the burden of presenting a complete record that establishes grounds for

10

vacating the award. *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 568 (Tex. App.—Dallas 2008, no pet.).

The parties agree that the Federal Arbitration Act governs this case. An arbitration award governed by the FAA must be confirmed, unless it is vacated, modified, or corrected on certain limited grounds. *See* 9 U.S.C. § 9–11. The Supreme Court has held that the "statutory grounds provided in sections 10 and 11 of the FAA for vacating, modifying, or correcting an arbitration award are the exclusive grounds for vacating an arbitration award." *Royce Homes*, 315 S.W.3d at 86 (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008)).

Section 10(a) authorizes a court to vacate an arbitration award:

(1)    where the award was procured by corruption, fraud, or undue means;

(2)    where there was evident partiality or corruption in the arbitrators, or either of them;

(3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)    where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Brooks's arguments on appeal focus on section 10(a)(4)—whether the arbitrator exceeded his powers.

11

**B.     Scope of Arbitrator's Powers**

**1.     Arbitrator did not disregard the terms of the parties' fee agreement.**

Brooks first argues that the trial court should have vacated the arbitration award because the arbitrator exceeded his authority by entering an award that disregarded the express terms of the fee agreement between the parties, which states: "The parties understand that, in the event no recovery is obtained on the Client's claim, Client will not owe Attorneys any money for Attorney's time, service, fees, costs, or any other advanced expenses." Brooks contends that Kirkendall Dwyer did not actually recover—i.e., collect—anything on the judgment in the Metro Litigation. Therefore, according to Brooks, a condition precedent of Kirkendall Dwyer's breach-of-contract claim was not met and the arbitrator exceeded his powers in disregarding this term of the contract. *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (arbitrator who exceeds his authority issues award that reflects his own notions of economic justice instead of drawing its essence from contract). We disagree.

12

The plain language of the parties' fee agreement states:

> Any and all disputes, controversies, claims or demands arising out of or relating to this Agreement or any provision hereof, the providing of services by Attorneys to Client, or in any way relating to the relationship between Attorneys/Client whether in contract, tort or otherwise, at law or in equity, for damages or any other relief, shall be resolved by binding arbitration pursuant to the Federal Arbitration Act in accordance with the Commercial Arbitration Rules then in effect with the American Arbitration Association.

This language reflects a broad arbitration clause this is inclusive rather than exclusive. *See Wagner v. Apache Corp.*, 627 S.W.3d 277, 285 (Tex. 2021). And there is no dispute that Kirkendall Dwyer's breach-of-contract claim to recover its fees arises out of or relates to this fee agreement.

Thus, it was up to the arbitrator to interpret the parties' fee agreement—including the provision cited above by Brooks—to resolve Kirkendall Dwyer's breach-of-contract claim. In finding in favor of Kirkendall Dwyer on its breach-of-contract claim, the arbitrator could have rejected Brooks's interpretation above and instead interpreted the word "recovery" as used in this provision to mean the amount that was *awarded* in the final judgment in the Metro Litigation, not the amount actually collected by Kirkendall Dwyer from that judgment. *See Recovery*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "recovery" as "[t]he obtainment of *a right* to something (esp. damages) by a judgment or decree" or as "[a]n amount *awarded in or collected from* a judgment or decree" (emphasis added)).

13

But even if the arbitrator made a mistake in the interpretation of the parties' fee agreement, such a mistake does not support vacatur of the award on the ground that the arbitrator exceeded his powers. "Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans*, 569 U.S. at 569 (internal quotation marks omitted). Section 10(a)(4) of the FAA "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly." *Id.* at 572; *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) ("It is not enough for petitioners to show that the [arbitration] panel committed an error—or even a serious error.").

Brooks's argument that the arbitrator disregarded a provision of the contract is actually a challenge to the arbitrator's interpretation of this provision and, thus, to the merits of Kirkendall Dwyer's breach-of-contract claim.[6] But such a merits-based challenge is not a permissible ground for vacatur under the FAA. *See, e.g.*, *Thomas v. Cook*, 350 S.W.3d 382, 393 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (holding that appellant's contention that arbitration award should be vacated because

---

[6]    In fact, Brooks states in her reply brief that resolution of this issue "turns on what 'recovered' means." And, she contends, because the evidence reflects that Kirkendall Dwyer made no recovery, a condition precedent to its breach-of-contract claim was not met.

arbitrator improperly interpreted parties' contract focused on merits of parties' contractual dispute and therefore provided no basis for vacatur under FAA). And because the parties agreed to submit disputes arising out of the fee agreement to an arbitrator rather than to a judge, "it is the arbitrator['s] view of the facts and of the meaning of the contract that they have agreed to accept." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37–38 (1987).

Therefore, we hold that Brooks has not met her burden under the FAA to show that the arbitrator exceeded his powers by disregarding the terms of the parties' fee agreement.

## 2. Arbitrator was not required to provide a reasoned award.

Brooks next argues that the arbitrator exceeded his powers by failing to provide a reasoned award. Brooks contends that because the Scheduling Order allowed the parties to submit proposed findings and conclusions to the arbitrator, the arbitrator thus "requested the parties prepare a reasoned award with specific findings." And although the arbitrator entered more than just a simple award, he failed to provide a reasoned award because he did not explain his breach of contract findings or rule on Brooks's defenses.

Absent an agreement to the contrary, an arbitrator issues a "standard award," which simply announces a result without any reasoning or explanation. *Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 857 (Tex. App.—Houston [1st Dist.] 2015, no

pet.). However, when an arbitration agreement requires that an award be provided in a specific form, such as a "reasoned award," an arbitrator may exceed his powers by failing to provide the award in that form. *See, e.g.*, *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011); *see also Stage Stores*, 477 S.W.3d at 852, 863 (deciding issue of whether arbitrator provided "reasoned award" as agreed by parties).

As an initial matter, we note that the parties' fee agreement does not contain a reference to the form of the award. But the fee agreement does provide that any dispute with respect to the fee agreement "shall be resolved by binding arbitration pursuant to the Federal Arbitration Act in accordance with the Commercial Arbitration Rules then in effect with the American Arbitration Association." The Commercial Arbitration Rules in effect at the time Kirkendall Dwyer filed its demand for arbitration did not require a reasoned award. Rather, Rule R-46(b) stated that "[t]he arbitrator need not render a reasoned award *unless the parties request such an award in writing* prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate." AAA, Comm. Arb. R-46(b) (2013) (emphasis added).[7]

---

[7] The Commercial Arbitration Rules were amended effective September 2022, after Kirkendall Dwyer filed its demand for arbitration. This same rule is included verbatim in the amended rules as Rule 48(b). *See* AAA, Comm. Arb. R-48(b) (2022).

Likewise, the arbitrator's "Report of Preliminary Hearing and Scheduling Order" states:

> Where the Parties' arbitration agreement does not specify a particular form of award or award type, *then a Standard Award format will typically be used, unless the parties specifically agree otherwise*, in a writing filed with the AAA Case Manager. Any request to deviate from the above should be made in writing, and as per the requirements of the AAA Commercial Arbitration Rules. (Emphasis added).

Brooks concedes that the parties did not agree in writing to any particular form of the award. But she alleges that the language in the Scheduling Order that required the parties to "furnish for the Arbitrator's consideration a proposed form of award . . . specifically including any particular factual findings, legal conclusions or other evidence-based reasoning which the submitting party proposes for inclusion in the final award," meant that the arbitrator was required to render a reasoned award. Not so.

Both the applicable AAA rule and the Scheduling Order only require something other than the standard award—e.g., a reasoned award—if agreed to in writing by the parties. That indisputably did not happen here.[8] The Scheduling Order's requirement that the parties submit *proposed* findings and conclusions after

---

[8] Brooks relies heavily on this Court's decision in *Stage Stores* to support her argument that the arbitrator failed to provide a reasoned award. *See Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848 (Tex. App.—Houston [1st Dist.] 2015, no pet.). But in *Stage Stores*, the parties explicitly "agreed that the form of the award would be a 'reasoned award.'" *Id.* at 856. Thus, the issue there was what constitutes a reasoned award, not whether a reasoned award was required in the first place. For that reason, Brooks's reliance on this aspect of *Stage Stores* is misplaced.

17

the final hearing for *consideration* by the arbitrator does not equate to a requirement that the arbitrator render a reasoned award. Accordingly, because the parties did not agree in writing to deviate from the typical standard award, we conclude that the arbitrator was not required to render a reasoned award. *See Stage Stores*, 477 S.W.3d at 857 (stating that in absence of parties' agreement to contrary, arbitrator issues standard award). Thus, the arbitrator was not required to do anything other than "announce[] a result without any reasoning or explanation," and we hold that the arbitrator did not exceed his powers by purportedly failing to explain his breach of contract findings or rule on Brooks's defenses. *See id.*

In connection with her argument that the arbitrator failed to render a reasoned award, Brooks also contends that the evidence introduced at the arbitration hearing demonstrates that Brooks did not breach the fee agreement. To the extent that Brooks argues the evidence does not support a finding that she breached the fee agreement, this goes to whether the arbitrator made a mistake of law or fact and to the sufficiency of the evidence.

But under the FAA's limited statutory vacatur grounds, an arbitrator does not exceed his authority by making a mistake of law or fact. *See W. Dow Hamm III Corp. v. Millennium Income Fund, L.L.C.*, No. 01-12-00313-CV, 2013 WL 978263, at *5 (Tex. App.—Houston [1st Dist.] Mar. 12, 2013, pet. denied) (mem. op.); *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("Courts

18

are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement."). And "[i]n the absence of a statutory or common law ground to vacate or modify an arbitration award, a reviewing court lacks jurisdiction to review other complaints, including the sufficiency of the evidence to support the award." *Thomas Petroleum, Inc. v. Morris*, 355 S.W.3d 94, 98 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (quoting *IPCO–G. & C. Joint Venture v. A.B. Chance Co.*, 65 S.W.3d 252, 256 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)). Accordingly, we conclude that Brooks's complaint that the evidence does not support a finding that she breached the fee agreement is not a valid basis for vacating the award.

### 3. Brooks has not established grounds for vacating arbitrator's award of attorney's fees.

Brooks also argues that the trial court erred in confirming the award because the arbitrator exceeded his powers by awarding attorney's fees in the absence of evidence and, thus, failed to provide a reasoned award. Brooks contends that Kirkendall Dwyer "has no attorney's fees" and challenges the evidence submitted by Kirkendall Dwyer in support of its attorney's fees. Brooks also contends that, despite being required to provide some reasoning for his award to be considered "reasoned," the arbitrator "completely failed" to explain how he reached the amount of his attorney's-fee award to Kirkendall Dwyer. Thus, according to Brooks, the award is subject to vacatur.

19

But we have already rejected Brooks's argument that the arbitrator was required to provide a reasoned award. *See Stage Stores*, 477 S.W.3d at 857. And we have rejected arguments challenging the sufficiency of the evidence or attacking the merits underlying the arbitrator's award, as these are not permissible grounds for vacatur under the FAA. *See Thomas Petroleum*, 355 S.W.3d at 98; *Royce Homes*, 315 S.W.3d at 86. Accordingly, Brooks's argument that the arbitrator's award of attorney's fees should be vacated fails too for the reasons discussed above.

### 4. Brooks has waived any claim of actual bias.

We note that in several places throughout her briefing, Brooks asserts that the arbitrator was biased in favor of Kirkendall Dwyer.[9] While bias is not a statutory ground for vacatur under the FAA, "corruption, fraud, or undue means" and "evident partiality" are. *See* 9 U.S.C. § 10(a)(1), (2). But Brooks does not separately argue that the arbitration award should be vacated based on corruption or fraud under section 10(a)(1) or evident partiality under section 10(a)(2)—or even based on bias generally. Nor does she cite to any authority setting forth these standards or present

---

[9] As examples of the arbitrator's bias, Brooks points to the arbitrator's alleged:
- failure to explain his breach-of-contract finding or rule on her defenses;
- failure to explain how she breached the fee agreement, even after she advised him that his findings were lacking;
- award of "fraudulent" attorney's fees in favor of Kirkendall Dwyer, despite Kirkendall Dwyer "introducing no evidence of its own invoices"; and
- rulings on her objections to Kirkendall Dwyer's attorney's fee expert's testimony and her requests to exclude documents.

20

any argument explaining why they apply here. *See* TEX. R. APP. P. 38.1 (requiring appellant's brief to contain concise statement of issues and "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

She likewise does not demonstrate that she preserved the issue of bias. "In appeals from judicial proceedings, the requirements for preserving complaints and for the record are set out, respectively, in Rules 33 and 34 of the Texas Rules of Appellate Procedure. Although these rules are not written for appeals from arbitration awards, their principles should govern such appeals." *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 101 n.80 (Tex. 2011). As a result, a party who knows or has reason to know of an arbitrator's alleged bias but remains silent pending the outcome of the arbitration waives the right to complain. *Skidmore Energy, Inc. v. Maxus (U.S.) Expl. Co.*, 345 S.W.3d 672, 684 (Tex. App.—Dallas 2011, pet. denied); *see also Bossley v. Mariner Fin. Grp., Inc.*, 11 S.W.3d 349, 351 (Tex. App.—Houston [1st Dist.] 2000), *aff'd*, 79 S.W.3d 30 (Tex. 2002). "A party may not sit idly by during an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrator when the result turns out to be adverse." *Bossley*, 11 S.W.3d at 351–52.

Brooks does not point to, nor have we found, anywhere in the arbitration record where she raised the issue of the arbitrator's partiality with the arbitrator

himself. She did not raise it despite arguing *in the trial court* that the arbitrator was impartial as early as her response to Kirkendall Dwyer's motion to compel arbitration, ten months before the arbitrator issued his award. Accordingly, by failing to object to the arbitrator's alleged bias during the arbitration, Brooks waived any claims of actual bias that allegedly occurring during the arbitration proceeding as a basis to vacate the arbitration award. *See, e.g.*, *Load Trail, LLC v. Julian*, 622 S.W.3d 472, 478 (Tex. App.—Texarkana 2021, no pet.) (holding that appellant waived claims of arbitrator's actual bias by failing to object during arbitration proceeding to what it deemed "a startling, unmasked display of bias").

For all the above reasons, we conclude that Brooks has failed to satisfy her heavy burden to demonstrate grounds for vacating the arbitrator's award under the FAA. Accordingly, we hold that the trial court did not err in confirming the award.

### Modification of Final Judgment

Lastly, Brooks argues that the trial court abused its discretion by denying her motion to modify the final judgment. Brooks argues that the final judgment—which awarded Kirkendall Dwyer a sum of $150,682.93—should be modified to specify that Kirkendall Dwyer may only seek to recover $100,032.93 from the 269th district court's registry, where the disputed funds arising out of the Metro Litigation are being held. Brooks contends that Kirkendall Dwyer is limited to recovering *only* this amount from the registry because that is what the arbitrator awarded on its

22

breach-of-contract claim. Brooks also asserts that the arbitrator specified that this amount—$100,032.93—was to be awarded to Kirkendall Dwyer from the registry funds. According to Brooks, if the final judgment is not so modified, Kirkendall Dwyer will obtain more funds from the registry than was awarded by the arbitrator.[10]

We review a trial court's denial of a motion to modify a final judgment for an abuse of discretion. *Ramirez v. JJ & EG, LLC*, No. 14-22-00715-CV, 2023 WL 6561230, at *1 (Tex. App.—Houston [14th Dist.] Oct. 10, 2023, pet. denied) (mem. op.). The test for an abuse of discretion is whether the trial court acted arbitrarily or without reference to guiding legal principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

Here, the trial court's final judgment awards "the Amount of $150,682.93 [to] Kirkendall Dwyer, LLP." As acknowledged by Brooks, this equals the total amount awarded by the arbitrator—i.e., $100,032.93 in damages for breach of contract, $28,170.00 in attorney's fees, and $22,480.00 in administrative fees and costs of the arbitration. And despite Brooks's claims to the contrary, the arbitrator did not direct that the $100,032.93 was to be paid out of the registry. It is true that the arbitrator noted that Kirkendall Dwyer "asserted its right to [the amount held in the registry] under a theory of breach of contract," and sought "to apply any recovery pursuant to

---

[10] At the time Brooks filed her appellate brief, she represented that the 269th district court's registry contained $103,247.66.

this Award against the amount still remaining in the registry." But the arbitrator did not instruct that Kirkendall Dwyer be awarded the $100,032.93 from the registry, stating only:

> With regard to the breach of contract claim that Brooks failed to pay KD's attorney's fee interest in Brooks's recovery, and the associated expenses, in the amount of USD $101,602.93, the Tribunal finds in favor of KD and against Brooks, and hereby **AWARDS** to KD damages, in the amount of its reasonable and necessary fees and costs in the Underlying Litigation, in the aggregate amount of **USD $100,032.93** against Brooks.

By awarding Kirkendall Dwyer "the Amount of $150,682.93," the trial court awarded the exact relief provided for by the arbitrator—nothing more. Accordingly, we hold that the trial court did not abuse its discretion in denying Brooks's motion to modify the final judgment.

## Conclusion

We affirm the trial court's final judgment confirming the arbitration award in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Caughey and Johnson.